## Middlesboro Black Gem Coal Co. v. Capps.

May 19, 1944.

Drinnon & Whalin for appellant.

W. L. Hammond and J. H. Taylor for appellee.

Opinion of the Court by Judge Thomas—Reversing.

Appellee, and plaintiff below, Jake Capps, filed his petition in the Bell circuit court against appellant, and defendant below, Middlesboro Black Gem Coal Company, seeking to recover of it the sum of $1,125 for alleged breach of a parol contract whereby plaintiff agreed to pull the pillars from an abandoned opening on defendant's mining plant and deliver the coal therefrom to the defendant's scales, he furnishing all the labor therefor and to receive as compensation $1.35 per ton. Defendant, as plaintiff alleged in his petition, "was to furnish plaintiff with *a* mule to assist in so hauling the ,coal." (Our emphasis) At the trial a majority verdict for plaintiff was rendered in the sum of $562.50, which the court declined to set aside on defendant's motion for a new trial, from which it prosecutes this appeal.

Plaintiff alleged that the contract was entered into on or about May 1, 1942, but he did not allege when he commenced to perform the contract. He averred that defendant did furnish him with a mule with which he worked until "about November 11, 1942," when the contract was modified and it was mutually agreed that plaintiff should use his pony, and return the mule to defendant where it desired to work it in the opening of a new and higher seam of coal, and that plaintiff should receive for the use of his pony 10c per ton, or $1.45, instead of the original compensation of $1.35; but it was not averred that the arrangement for plaintiff to use his pony was to continue throughout the contract.

Defendant also owned other mules kept on the mining premises and it requested plaintiff to use one of them, which was smaller than the one first used, in lieu of plaintiff's pony so as to save the 10c per ton extra for the use of the pony. Plaintiff had stated on prior occasions that he would not use the later tendered mule and would abandon his contract before he would do so. However, when the proposition was made by defendant

to use the smaller mule in lieu of his pony he agreed to give it a trial and if the mule proved capable of performing the required service he would make the exchange. He put the mule to work one morning and hauled out only one load of coal with it and then refused to accept it in lieu of his pony. His excuse for refusing to accept the mule was "it was lame—I had to pull the coal out on a curve and when it got about over, it would jump against the mule," meaning thereby, as we conclude, that the coal cars would run down against the mule and strike some portion of its hind legs, which in all probability produced the lameness, if any, occurring on that occasion of trying out the mule. At any rate, plaintiff at the end of that first trial trip released the mule and substituted his pony. When defendant discovered that exchange it insisted on plaintiff using the mule, but he declined to do so and quit the job. Later he filed this action to recover damages of defendant for breaching its contract with him as he alleged, fixing the amount as above stated.

Defendant denied all of the material averments of the petition as to the character of contract entered into, but it admitted that it employed plaintiff to remove pillars from its particular opening (which was a narrow seam not exceeding 22 inches), but it denied that the contract embraced the removal of all the pillars within the opening, but only that plaintiff should receive the stated compensation for the amount he did remove, and that both he and defendant had the right to terminate the contract at pleasure, it being as contended only an open one. Defendant furthermore alleged that the tendered substitute mule was amply able to perform the service required of it by plaintiff and that it was not afflicted with any permanent lameness, except that on rare occasions when too heavily loaded, causing it to strain in pulling, it would exhibit some small but temporary lameness but which had occurred infrequently through several years of use in the same capacity.

Aside from such alleged lameness of the character indicated the mule was proven to be a hard worker and rendered most satisfactory service. It was so testified by some of those who had used it, as well as by the manager, of the mining operations of defendant, the assistant manager, and others than the officials of the

corporation. In addition thereto, two facts were uncontradictedly proven demonstrating the fitness and qualifications of the tendered mule to perform the services required, and which were, that it had satisfactorily worked in the same capacity by others who had pulled pillars from the same opening before plaintiff undertook the job, and likewise satisfactorily served in removing all of the pillars remaining in that entry after plaintiff surrendered his contract and declined to proceed further. Those who worked the mule on the two last occasions referred to testified that it was efficient and they registered no complaint in that regard. Such demonstrated facts are most convincing that the mule so furnished was capable and that plaintiff for some unjustifiable reason declined to accept it in lieu of his pony and insisted on using it, possibly for the purpose of receiving the extra 10c per ton for its use. But however that may be we are convinced from reading the entire testimony that the evidence is overwhelming that the mule could, as it did for former and following contractors, render the same service.

Furthermore, it was the duty of plaintiff when he agreed to try the substitute smaller mule to give it a fair, reasonable and bona fide test. He did not state the character of the only load he hauled with it, i. e. whether it was heavy, medium or light; but whatever weight it may have had it was sufficient to run against the mule on declines in the mine tracks and collide with its hind legs which we conclude was and is not only an unfair test, but also such a brief one as to destroy good faith in its effort. The duty to make such indicated tests is analogous to the purchaser of machinery or other equipment of a stipulated quality before refusing to accept it. In such cases the test must be made in good faith and with a bona fide effort to determine whether the quality is or not of the kind contracted for before the purchaser may repudiate the contract. The proposition is so universal with reference to sales that no substantiating authority is necessary. Here the agreement on the part of defendant to furnish "a mule" was tantamount to selling or contracting away the services of that mule for the particular purpose which in the absence of an express agreement carried with it an implied one that the animal was qualified to perform the service.

Moreover, plaintiff, as we have seen, alleged in his

petition that defendant refused to permit him to further proceed with the performance of the alleged contract and thereby itself terminated it, whilst the proof shows that the plaintiff terminated it because of an alleged breach thereof by defendant. It is quite probable that the difference between the pleading and the proof in that regard created a fatal variance, but, since it is not so argued, and since defendant appears to have not raised the question during the trial, we will bypass it without determination. Under the evidence as adduced the court should have sustained defendant's motion for a peremptory verdict in its favor.

It might also be added that plaintiff did not state when testifying originally that the contract was for the removal of all the pillars at the particular entry but did so testify after defendant had moved for a peremptory instruction at the close of plaintiff's testimony, which, however, was denied by the manager of defendant who made the contract and he with others testified that it was not usual or customary to enter into such completed contracts in the removal of pillars because of the many contingencies that might interfere and obstruct the completion of the job.

It is argued by counsel for defendant that it was the duty of plaintiff to allege and prove efforts to minimize damages by procuring other labor which he did not do. However, it is our conclusion that this case is not one for the application of the rule contended for, since it applies only to relationships of master and servant, principal and agent and perhaps others, within which the present case may not be classified. Other issues are discussed in briefs but the conclusion reached renders it unnecessary to either name or determine them.

Wherefore, for the reasons stated, the judgment is reversed for proceedings not inconsistent with this opinion.